### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| **NORMA G. FIELDS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00020 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Vernon M. Williams, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Dina White Griffin, Assistant Regional Counsel; Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Norma G. Fields filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and disabled widow's benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Fields filed for benefits on August 24, 2007, alleging that she became disabled on December 20, 2006.  Her claim was denied initially and upon reconsideration.  Fields received a hearing before an administrative law judge ("ALJ"), during which Fields, represented by counsel, and a vocational expert testified.  The ALJ denied Fields' claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration.  Fields then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Fields was born on October 27, 1956, making her an individual closely approaching advanced age under the regulations.  20 C.F.R. § 404.1563(d) (2010).  Fields has a high school education[1] and is licensed as a Certified Nursing Assistant.  She has worked in the past as a nursing assistant, a cashier, and a cafeteria worker.  Fields originally claimed she was disabled due to back problems, degenerative arthritis, blood clots, and depression.

Fields was treated by Martin F. Monahan, M.D., from March 2003 to August 2007.  During this time period, Fields complained of chest pain, back pain

---

[1] Fields also attended college for two years.

-2-

radiating into the left leg, right leg swelling, left hip pain, migraine headaches, and degenerative disc disease.  In August 2004, lumbar spine X rays revealed degenerative changes at L4-L5 and L5-S1.  An MRI of the lumbar spine showed bulging annuli at L4-5 and L5-S1, a left paracentral disc extrusion at L5-S1 causing slight compression of the transiting left S1 nerve root, and mild facet arthrosis at L4-5 and L5-S1.

In November 2004, Fields was examined by Robert D. Gilmer, M.D., for complaints of increasing low back pain radiating into the left lower extremity.  Dr. Gilmer diagnosed Fields with a herniated nucleus pulposus and lower lumbar radiculitis.  He provided Fields with an epidural steroid injection.

In November 2006, Fields sought treatment for complaints of chronic low back pain, degenerative arthritis, depression, anxiety, weight gain, and fatigue.  Laboratory tests were normal, and Sally Pennings, F.N.P., prescribed Elavil and Celebrex.

In December 2006, Fields was treated by Lyle W. Bauman, M.D., for acid reflux disease and peptic ulcer disease.  An EGD revealed mild gastritis, and a colonoscopy showed mild diverticulosis in the sigmoid colon and internal hemorrhoids.  Dr. Bauman stated that Fields' gastric emptying was within the upper limits of normal.

In August 2007, Fields sought treatment at Johnston Memorial Hospital's Emergency Room for complaints of chest pain. Anne Kegley, M.D., reported that all laboratory and heart tests were normal. Dr. Kegley gave Fields an iron supplement and discharged her from the hospital.

William Humphries, M.D., a state agency physician, reviewed Fields' medical records in January 2008. He diagnosed Fields with diastolic hypertension; mild degenerative joint disease in the hands, knees, and feet; mild chronic obstructive pulmonary disease; chronic thoracic and lumbar strain with probable degenerative joint disease; chronic cervical strain; and moderate venous insufficiency in the lower extremities. Dr. Humphries opined that Fields was capable of performing a range of light work. Two other state agency physicians, Donald Williams, M.D., and Joseph Duckwall, M.D., also reviewed Fields' medical records and reported similar findings.

In March 2008, Fields underwent a MRI of the lumbar spine. The MRI revealed degenerative change and facet arthrosis at L2-L3 through L5-S1, as well as mild central canal stenosis. Jeffrey McCraw, M.D., provided Fields with a second epidural steroid injection.

Howard S. Leizer, Ph.D., a state agency psychologist, reviewed Fields' medical records on March 31, 2008, and determined that she did not have a medically determinable mental impairment. Dr. Leizer noted that Fields' mental

allegations were not credible. On August 13, 2008, a second state agency psychologist, Richard J. Milan, Jr., Ph.D., opined that Fields did not have a severe mental impairment.

At the administrative hearing held in March 2009, Fields testified on her own behalf. Although Fields described problems with back pain and anxiety, she stated that she was able to cook, do laundry, perform housework, take care of her disabled son, and go to church regularly.

Annemarie Pache, a vocational expert, also testified. She classified Fields' past work as a cafeteria worker as light, unskilled; her past work as a cashier as light, semi-skilled; and her past work as a nursing assistant as medium, semi-skilled.

After reviewing Fields' records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of degenerative back, neck, and thoracic disorder, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Fields' limitations, the ALJ determined that Fields retained the residual functional capacity to perform a range of sedentary work that did not involve working at unprotected heights or operating hazardous machinery or fumes. The ALJ noted that Fields should avoid repetitive bending, balancing, and crawling. Additionally, the ALJ stated that Fields would need to alternate

sitting and standing each half hour. The vocational expert testified that someone with Fields' residual functional capacity could work as a sedentary cashier. The vocational expert testified that this position existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Fields was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Subsequent to the ALJ's decision, Fields sought treatment at Smyth County Counseling. During the period of August 2009 through October 2009, she complained of depression, crying spells, sleeping problems, decreased appetite, memory impairment, and low energy. Patty McAndrews diagnosed Fields with major depressive disorder, recurrent, moderate, and assessed a GAF score of 55.[2]

Fields argues the ALJ's decision is not supported by substantial evidence. Specifically, Fields argues that the ALJ erred by concluding that she did not have severe mental impairments, and by failing to properly consider her allegations of disabling pain. For the reasons below, I disagree.

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Fields argues that the ALJ's decision is not supported by substantial evidence. She presents two arguments.

First, Fields argues that the ALJ erred by concluding that she did not have severe mental impairments. Specifically, she argues that the additional evidence from Smyth County Counseling presented to the Appeals Council after the ALJ's decision shows that she has a severe mental impairment and warrants remand.

The Appeals Council will consider additional evidence in deciding whether or not to grant review "'if the additional evidence is (a) new, (b) material, and (c)

relates to the period on or before the date of the ALJ's decision.'" *Wilkins v. Sec'y, Dep't of Health & Human Servs,* 953 F.2d 93, 95-96 (4th Cir. 1991) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative," and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome" of the ALJ's decision. *Id*. at 96.

Contrary to Fields' argument, the Appeals Council did not fail to consider the additional evidence that she submitted. The Appeals Council specifically indicated that it considered such evidence, but that the new evidence did not provide a basis for changing the ALJ's decision. In cases where the Appeals Council considers additional evidence but denies review, the Fourth Circuit requires reviewing courts to consider the record as a whole, including the new evidence, in order to determine whether the ALJ's decision is supported by substantial evidence. *Id*.

In this case, when considering the record as a whole, the ALJ's decision is still supported by substantial evidence. The additional medical records from Smyth County Counseling encompass only an initial assessment and five counseling visits from August 2009 to October 2009. Aside from these visits, Fields received no formal mental health treatment. Unlike in *Meyer v. Astrue*, No. 10-1581, 2011 WL 6008976, at *6 (4th Cir. Dec. 2, 2011), where the new evidence

submitted to the Appeals Council was supported by other evidence in the record, Fields' additional medical records are essentially uncorroborated. Additionally, two independent state agency psychologists specifically found that Fields did not have a mental impairment that significantly impacted her work-related abilities. Thus, the evidence in this case is much more "one-sided" than in *Meyer*.

Furthermore, while Fields' counselor, Patty McAndrews, diagnosed Fields with depression, even these new counseling records do not suggest that her depression significantly limited her ability to perform basic work activities. In fact, McAndrews noted a GAF score of 55, indicating only moderate difficulty in occupational functioning. Thus, it is clear that the ALJ's decision is still supported by substantial evidence despite the additional evidence submitted to the Appeals Council.

Second, Fields argues that the ALJ failed to properly consider her allegations of disabling pain.

There is nothing in the record to indicate that the ALJ ignored or improperly discounted Fields' claims of disabling pain. Fields had an opportunity at the administrative hearing to develop the record as it relates to her allegations. Fields' counsel questioned her regarding her complaints, and the ALJ properly considered this testimony as well as all of the objective medical evidence before concluding that Fields' statements concerning the nature and severity of her symptoms were

not fully credible. Fields' relatively conservative treatment for musculoskeletal impairments, coupled with the fact that she engaged in extensive activities of daily living, provide further support for the ALJ's findings.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: December 15, 2011

/s/ James P. Jones  
United States District Judge